Rhea County *et al., v.* Walter White.

(*Knoxville,* September Term, 1931.)

Opinion filed November 14, 1931. Petition to rehear denied December 19, 1931.

H. E. HICKS and D. SULLINS STUART, for plaintiff in error.

CHAS. C. GUINN and LYNCH, BACHMAN, PHILLIPS & LYNCH, for defendant in error.

Mr. Justice Swiggart delivered the opinion of the Court.

The law case above styled involves a petition for the writs of *certiorari* and *supersedeas,* addressed to the Circuit Court of Rhea County, whereby petitioner, Walter White, seeks to *supersede* an order of the quarterly county court removing him from the office of county superintendent of schools for cause, and by *certiorari,* to obtain a hearing *de novo* in the circuit court as to the existence of statutory cause for his removal.

The two equity causes, one brought by White and the other by his elected successor in office, J. H. Miser, invoke injunctive process in behalf of each of the claimants against interference by the other. The substantive rights of the parties in these causes will be controlled by the proper determination of the questions presented in the action at law.

White's petition in the circuit court predicates his right to relief upon two grounds: (1) that the quarterly county court was without jurisdiction to prefer or determine charges against him, and without jurisdiction to remove him; and (2) that the action of the county court does him irreparable injury, in that "he is not guilty of any of the charges preferred against him, and this he is prepared to show if demanded upon hearing in your Honor's Court."

The Circuit Judge directed the issuance of the writs of *certiorari* and *supersedeas,* upon presentation of the petition; and thereafter a Justice of the Supreme Court granted a petition of the county for similar writs to remove the proceeding to the Supreme Court.

■ We are of opinion that the quarterly county court had jurisdiction and statutory power to remove White from his office for cause. The statute, Acts 1873, chapter 25, section 8 (Shannon's Code, section 1410), after creating the office of county superintendent to be elected by the county court, provides: "He shall be subject to removal from office for misbehavior or inefficiency at any time, by the county court; provided that the causes for such removal shall be communicated to him in writing."

By Private Acts of 1927, chapter 547, the power to elect a county superintendent of schools in Rhea County was taken from the county court and vested in the people, by popular vote. White was elected under this Act, and contends that the Act, depriving the county court of the power to elect, by necessary implication repealed the provision of the Act of 1873, granting it the power to remove. We do not think this conclusion can be maintained. The power to remove is not an arbitrary power, but can be exercised only for cause, for "inefficiency or misbehavior." Whether elected by the people or by the county court, the superintendent is a county officer, and the county court is the most likely tribunal to be vested with power to remove an unfaithful county officer. There is no real or apparent repugnancy between provisions directing the election of a county officer by popular vote, and those authorizing his removal by the county court on a finding that such officer is guilty of misbehavior in office or inefficiency.

■ The General Educational Act, Acts 1925, chapter 115, makes no provision for the removal of an unfaithful county superintendent, and there is therefore no repugnancy between that Act and the removal provision of the Act of 1873. This Court is committed to the rule that

the General Education Act repeals by implication only those provisions of earlier Acts affecting schools which are irreconcilably inconsistent or repugnant. *McCord* v. *Marshall County,* 152 Tenn., 675, 680, 280 S. W., 692, 693; *State ex rel.* v. *Humphreys,* 163 Tenn., 20, 40 S. W. (2d) 405.

With reference to the second ground of White's petition in the circuit court, that he is not guilty of the charges preferred against him, the county contends that the power of removal exercised by the county court is not judicial in character, but is legislative or administrative, and that therefore the circuit court is without power to review, except to determine whether in the exercise of the power the county court acted legally and not in excess or abuse of lawful power. In other words, it is contended that the circuit court may only issue the common-law writ of *certiorari,* as in *Conners* v. *City of Knoxville,* 136 Tenn., 428, 139 Tenn., 45; 189 S. W., 870, 201 S. W., 133; and not the statutory writ, as in *Staples* v. *Brown,* 113 Tenn., 639, 85 S. W., 254.

It cannot now be denied, under the authorities in this State, that the holder of a public office, duly elected, qualified and inducted for a fixed term, acquires certain property rights, of which he may not be arbitrarily deprived. The right to hold an office is ''a species of property.'' *State* v. *Malone,* 131 Tenn., 149, 170, 174 S. W., 257; *Maloney* v. *Collier,* 112 Tenn., 78, 100, 83 S. W., 667; *Malone* v. *Williams,* 118 Tenn., 390, 103 S. W., 798.

The Act of 1873 does not empower the county court to remove the county superintendent summarily. The removal must be for cause, and the cause for removal is limited to the two grounds specified, misbehavior and inefficiency. The county court must find the existence of the

statutory ground of removal as a condition to the exercise of the power. And while there is no express provision of the statute for a hearing, it is provided that the accused officer shall have written information of the causes assigned for his removal. This implies a hearing and an opportunity to defend against the charges, which was the procedure followed in the county court in the present instance. "The word 'cause' used in the removal clause means legal cause. It contemplates a charge, a trial, and a judgment of removal upon cause." The Judges' Cases (*McCully* v. *State*), 102 Tenn., 509, 521. "It is a rule of the common law, in accord with the plainest principle of justice, that to warrant the removal of an official under a limited power, specific charges should be made, and, after notice, all witnesses in the matter should be sworn." *Morley* v. *Power*, 73 Tenn., 691, 700. "The text-writers, as well as the decided cases, lay emphasis upon this necessity to formulate charges as an essential in all proceedings where the tribunal has the power of a motion for cause." *Hayden* v. *Memphis*, 100 Tenn., 582, 588, 47 S. W., 182.

In *Hawkins* v. *Kercheval*, 78 Tenn., 535, 540, the court construed provisions of a municipal charter authorizing police commissioners to hear and determine complaints against policemen, as grounds for dismissal from office. It was there said: "The commissioners in acting as a board to hear and determine complaints made against a member of the police, and remove him if need be, constitute a *quasi*-judicial tribunal, whose duties cannot be performed in the first instance by any other body. . . . The proceedings of such a tribunal may always be revised by the writ of *certiorari*, and its sentence an-

nulled, or the proper judgment rendered by the circuit court."

■ "Proceedings for the removal of an officer for cause are judicial in their nature and must be had before tribunals clothed with judicial powers. . . . The proceeding being thus a judicial one, the power must be exercised under the same limitations, precautions and sanctions as in other judicial proceedings." Mechem on Public Officers, section 455.

The proceeding in the quarterly county court for removal assumes a previous valid election, whether by the court or by popular vote, and therefore is essentially different from a hearing of a contest of the election by the body vested with power to elect in the first instance. Cases holding that the determination of such a contest is a legislative or administrative function, incident to the power to elect, are therefore not in point or controlling on the proposition here involved. *Donnelly* v. *Fritts,* 159 Tenn., 605, 21 S. W. (2d), 619, and cases there cited.

■ The legislative and judicial history of this State manifests a strong purpose not to curtail the right to review by the writ of *certiorari* the exercise of judicial power by inferior or *quasi*-judicial tribunals. *Staples* v. *Brown,* 113 Tenn., 639. Nor shall this result be accomplished in doubtful cases by denominating the action sought to be reviewed as legislative instead of judicial. *Dodd* v. *Weaver,* 34 Tenn. (2 Sneed), 671.

In *City of Nashville* v. *Martin,* 156 Tenn., 443, 3 S. W. (2d), 164, a policeman, employed under civil service regulations of the city charter, was found guilty by a civil service board of the city, upon charges of drunkenness, etc., and on that finding discharged. His asserted right to a trial *de novo* in the circuit court, upon the

granting of his petition for *certiorari,* was denied on the ground that the charter under which he was employed made his term of service subject to a trial and adverse finding of fact by the civil service board, which finding by express provision of the charter was made final. The petitioner, under such employment, had no private or property right which he could invoke the processes of a court to protect, so long as the civil service board which removed him proceeded legally and within its jurisdiction. The reasoning of the Court, in this opinion, impliedly assumes and concedes that the finding of the civil service board was a judicial or *quasi*-judicial finding or function, which would have been subject to review under the statutory writ of *certiorari,* if the charter act under which the petitioner was employed had not expressly provided that such finding by the board should be final and not subject to review except for "illegality or want of jurisdiction." There is no statutory direction that the action of the quarterly county court under consideration should be treated as final and not subject to review.

So we conclude that the finding of the quarterly county court that petitioner White was guilty of acts of misbehavior and inefficiency in office, as statutory grounds for his removal, was the exercise of a judicial function, subject to review and trial *de novo* in the circuit court by *certiorari,* as in *Staples* v. *Brown, supra.*

■ But the power thus vested in the circuit court to review the finding of the county court is a discretionary power only, and the writ may not be issued except upon a sworn petition showing cause, at least *prima facie,* for its issuance. *Hardin* v. *Williams,* 52 Tenn. (5 Heisk.), 385; *State* v. *Taxing District,* 84 Tenn. (16 Lea), 240;

*City of Knoxville* v. *Connors,* 139 Tenn., 45, 201 S. W., 133; *Ashcroft* v. *Goodman,* 139 Tenn., 625, 202 S. W., 939.

"The writ of *certiorari* is not of right, but subject to the sound discretion of the court or judge to whom the application is made." The writ of *certiorari* "is not a writ of course, but subject to the discretion of the court or judge to whom the application is made, and it lies when an appeal will not lie." *State* v. *Taxing District,* 84 Tenn., 240, 246, 248.

"It is true that the issuance of a writ of *certiorari* is a matter within the discretion of the court. A writ may be refused which would otherwise issue, where substantial justice has been reached by an inferior tribunal, or where public inconvenience would follow the writ." *City of Knoxville* v. *Connors,* 139 Tenn., 45, 49.

"The issuance of a writ of *certiorari,* to which the *supersedeas* applied for is dependent, is in the judicial discretion of the court, to be granted only when necessary to prevent substantial wrong, especially where the matters in controversy are of a public nature." *Ashcroft* v. *Goodman,* 139 Tenn., 625, 633.

This being the nature of the writ issued by the circuit court, it seems obvious that to sustain the writ against direct attack, as made in the county's petition in this court, the petition upon which the circuit court acted, asking for a trial *de novo* as to the fact of petitioner's misbehavior or inefficiency in office, must necessarily contain some averment of fact upon which the circuit judge might have exercised his discretion in the issuance of the writ.

The petition in the circuit court contained no averment of fact bearing upon the petitioner's guilt or innocence of the charges found against him by the county

court, other than his unsupported statement, hereinabove quoted, that he is not guilty of the matters charged.

The issue thus sought to be retried is one of fact, found against petitioner by the tribunal authorized by law primarily to inquire into and determine it, on account of which petitioner was adjudged unfit and removed from his office. It would be a mere travesty of words to hold that petitioner is not entitled to have the issue of his guilt retried in the circuit court, with the writ of *supersedeas* sustaining him in the office pending the suit, except upon a petition addressed to the discretion of the circuit judge, and then to hold that the petitioner's mere *ipse dixit* of "not guilty" is sufficient to invoke the exercise of discretion by the circuit judge and to sustain the issuance of the writ. A convicted defendant's repetition of his plea of not guilty, supported by averment of no fact or circumstance, has never been judicially accorded sufficient weight to discredit or impeach, even *prima facie,* the judgment of an impartial tribunal acting within its lawful powers, and thus put in motion the discretionary processes of a reviewing court. The issuance of the writ of *certiorari,* for all practical purposes, annuls and vacates the judgment or order sought to be reviewed, when *supersedeas* is also awarded, and to accomplish this result by *certiorari* we are convinced something more than the repetition of a plea of not guilty is required. The petition should present to the circuit judge facts from which at least the probability of innocence may be inferred.

It was said in *City of Knoxville* v. *Connors, supra,* that "when the writ of *certiorari* is once issued, the discretionary nature of the matter has passed." (139 Tenn., 50.) This does not mean that after the writ is issued the

party adversely affected may not, by motion to quash, or by direct proceedings for review as here, attack the sufficiency of the petition upon which the writ was issued.

The case is before us upon the entire record of the circuit court, certified pursuant to the writ of *certiorari* heretofore issued by this Court upon the county's petition. The petition prays for general relief, in addition to the specific prayer that the *fiat* of the circuit judge be vacated because "issued without jurisdiction or authority." The respondent in this court has moved to quash the writ and remand the case to the circuit court for trial *de novo*.

 "The court will not usually by *certiorari* interfere with a lower court's dealing with a case, until final judgment, but it has the power in a proper case, and where necessary to effect the ends of justice will use that power." *State ex rel.* v. *Hebert,* 127 Tenn., 220, 242, 154 S. W., 957; quoted in *Nashville* v. *Dad's Auto Accessories,* 154 Tenn., 194, 198, 285 S. W., 52.

 Being of opinion that the issuance of the writs of *certiorari* and *supersedeas* by the circuit court, for the purpose of a trial *de novo* of the merits of the charges against petitioner, was an abuse of the discretion vested in that court, and therefore illegal, because the petition therefor stated no case for an exercise of discretion; and having determined herein that the proceedings in the quarterly county court were authorized by law, we direct the entry of judgment here, reversing and vacating the judgment of the circuit court, and dismissing the petition there filed, at petitioner's cost.

The chancellor, having consolidated the two equity cases for hearing, issued the temporary injunction in behalf of Miser, restraining White from interfering with

Miser in the conduct of the office of county superintendent. Writs of *certiorari* and *supersedeas* were issued upon the order of one of the Justices of this Court, pursuant to White's petition therefor. For the reasons hereinabove stated, the writs so issued will be quashed and vacated, at petitioner's cost.

. Mr. JUSTICE CHAMBLISS "is not of opinion that the power to remove a superintendent of schools, conferred on the quarterly county court by the act which empowers that court to fill that office, exists when the superintendent has been elected by the people under an act so providing; and on this ground does not concur."