McKee *et al. v.* Board of Elections.

(*Nashville,* December Term, 1937.)

Opinion filed May 27, 1938.

Frank M. Bass, of Nashville, and Chas. M. Bryan, Sam Costen, William Gerber, and Frank H. Gailor, all of Memphis, for plaintiffs in error.

Chas. L. Cornelius and W. M. Fuqua, both of Nashville, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

This is a petition by a majority of the State Board of Elections praying for *certiorari* and *supersedeas* to the Circuit Court of Davidson County, charging that that Court has exceeded its jurisdiction in the issuance of *certiorari* and *supersedeas* to the Board of Elections. The *fiat* of that Court issued upon a petition filed by W. L. McKee, Joe Thompson and Ross A. Mathews charging that they had been illegally removed by the action of a majority of the State Board from their offices as Election Commissioners for Shelby County, and others appointed in their places; that they had been regularly appointed for a term of two years prior to the passage of Chapter 2 of the Public Acts of 1937, Third Extraordinary Session, under which the membership of the State Board had been increased and by authority of which the removal complained of had been undertaken; that their eligibility was unquestioned and their right to hold the offices was a constitutional property right of which they could not be deprived in violation of due process; that they were

not subject to removal, consistently with the statutory provisions creating their offices, except for cause or failure to perform their duties and upon notice, and a full and fair hearing.

The sworn petition to the Circuit Court sets forth at length and in detail the proceedings by and before the State Board and challenges the regularity, sufficiency and legality thereof on various grounds. Petitioners not only deny that any cause existed or was made to appear for their removal and assert that they were removed solely for partisan political purposes, but charge that no legally sufficient notice was given them of the hearing and that no such hearing was afforded them as is demanded by those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial, or *quasi*-judicial, nature. They allege various irregularities in the issuance of the notice to them and in the filing of the charges against them, that the charges were not signed by the persons whose names appear thereon, that they were unsworn and that these persons were not responsible or reputable.

Supporting the claim of vagueness and indefiniteness in the charges, they show, for example, that the first three of the charges read as follows:

"(1) That they, and each of them, appointed unfit persons as registrars of voters for the biennium registration held in August, 1937,

"(2) That they, and each of them, permitted the fraudulent and illegal registration of many persons who were not qualified to register.

. "(3) That they, and each of them, permitted the registration of many persons, who, irrespective of their legal

qualifications for registration, did not personally present themselves for registration."

They say that a very large number of persons were appointed by them as registrars and that the general charge that they "appointed unfit persons" wholly fails to afford petitioners opportunity. to meet the charge, there being no designation of the persons whose fitness was attacked. That this is even more true of the second and third charges; that such general charges carried no notice which would enable petitioners to prepare a defense; and that their motion to have the charges made more specific was arbitrarily denied.

It was also charged in the petition that no evidence was introduced to sustain the charges against them; that no rules or regulations were made or promulgated for the conduct of the trial of petitioners; that no provision was made for bringing witnesses to Nashville to attend and testify at the hearing on behalf of petitioners, although this was requested; that several members of the Board who were supposed to sit on the trial in a *quasi*-judicial capacity had prejudged the case and indicated in advance their decision, and that in all of these particulars, and many others, the hearing was incomplete, inadequate and legally insufficient. With the petition are exhibited various motions, affidavits and other documents used or attempted to be used in an effort to obtain a legal hearing and disposition of the trial.

The prayer of the petition is as follows:

"1. That your Honor award a writ of *certiorari* as authorized by the Statutes of the State of Tennessee, directed to the Board of Elections of the State of Tennessee and to the various members thereof, and in particular to J. B. Miller, presuming to act as its Secretary, requiring

the certification of said entire record and proceedings to your Honor, to the end that said proceedings be reviewed and that a hearing of the entire proceedings be had *de novo* under the Statutes of the State of Tennessee and reversed and that justice be done petitioners in the premises.

''2. That your Honor award a writ of *certiorari* as authorized by the common law and the Constitution of the State of Tennessee to the end that the Court may determine whether there was an absence or an excess of jurisdiction in the action of the State Board of Elections or a failure to proceed according to the essentials required by law on the part of the said Board, and that the action of said Board be reversed, supervised or revised and that justice may be done to petitioners in the premises.

''3. Petitioners further pray that the Court issue its order or writ of *supersedeas,* superseding and setting aside the orders of the said Board of Elections, pending the further hearings and proceedings in this cause.

''4. That proper notice be issued to all of the defendants herein to file such answer to pleadings as may be proper in the cause, but not under oath, the oath to their answers being expressly waived.

''5. That upon the filing of the record in this court, the court declare that all of the proceedings had and taken before said Board to be illegal, void and unauthorized, because of the manifold illegalities, and arbitrary, prejudiced and oppressive conduct hereinbefore set out, and that the entire proceedings be annulled and set aside.

''6. That if the court should be of the opinion that the proceedings were not wholly void, but were arbitrary, oppressive and illegal, so as to entitle the peti-

tioners herein to a trial *de novo,* that the court grant a trial *de novo* upon the record, with an opportunity to both parties to have the matter heard upon such things as are contained in the transcript, or such other evidence as either party may desire.

"7. That the court grant such other and further relief as is proper in the premises."

The petition and its prayer is practically identical with a former petition by and against the same parties, and for the same purpose, presented to and granted by the Circuit Court of Shelby County, superseded by this Court on the ground that the jurisdiction was in the Court of Davidson and not Shelby County, the opinion of this Court being handed down at Jackson on the 12th day of April, 1938. *McKee* v. *Board of Elections,* 173 Tenn., 269, 117 S. W. (2d), 752.

In this case, as was said in that opinion, "it is obvious that the writ of *certiorari* sought . . . is *certiorari* in lieu of appeal." The right of petitioners to such a writ and review was not passed on in this former case, if and when applied for in the court of the County having jurisdiction. It is clear that such right exists when sufficient cause for review is shown.

In *Staples* v. *Brown,* 113 Tenn., 639, at page 646, 85 S. W., 254, after showing that original jurisdiction is in the Circuit Courts to review the proceedings of all inferior tribunals, councils and boards created by the Legislature and vested with judicial functions, it was said:

"This jurisdiction of the circuit court to supervise and review upon the merits the proceedings of all inferior jurisdictions, especially those proceedings not according to the course of the common law, by *certiorari* and *supersedeas,* where no appeal is allowed or writ of error will lie, has been recognized and exercised from the earliest

days of our judicial history, and is now too firmly established by constitutional provision, statutory enactment, and judicial decision to be a subject of controversy.''

The opinion cites a great number of supporting decisions of this Court. It is unnecessary to re-name them here.

█ The petition to the Circuit Court appears to challenge, not the general jurisdictional power of the State Board of Elections to remove petitioners, but the validity and legality of the action taken in the instant case for want of adequate notice and opportunity to be heard, and the denial to petitioners of that full and fair hearing which the law requires in such *quasi*-judicial proceedings. In *Hayden* v. *Memphis,* 100 Tenn., 582, at page 588, 47 S. W., 182, at page 183, BEARD, J., quotes with approval from 1 Dillon, Mun. Cor. (4 Ed.), sec. 254, that ''there must be a charge or charges against him, specifically stated with substantial certainty; yet the technical nicety required in the indictments is not necessary.'' Mr. Justice BEARD proceeds: ''The text writers, as well as the decided cases, lay emphasis upon this necessity to formulate charges as an essential in all proceedings, where the tribunal has the power of amotion for cause. 'The power of removal can only be exercised when charges are made against the accused.' State v. St. Louis, 90 Mo. 19, 1 S. W., 757.''

Declaring that the question was whether or not the petition for *certiorari* ''assigned sufficient cause'' for invoking the writ,—which appears likewise to be true of the petition to the Circuit Judge in this case,—it was said to be ''clear on authority that formulated charges are essential to the regularity of proceedings in such cases.''

Finding that the charges in that case had not been properly "formulated", were not specific and afforded no satisfactory notice to the defendant, *certiorari* was sustained and the judgment of removal reviewed and quashed.

In *Rhea County* v. *White,* 163 Tenn., 388, 43 S. W. (2d), 375, a case of a removal from office by the County Court, the opinion quotes with approval from *Hayden* v. *Memphis, supra,* and also the following from two of our other cases (page 395):

" 'The word "cause" used in the removal clause, means legal cause. It contemplates a charge, a trial, and a judgment of removal upon cause.' . . . *McCully* v. *State,* 102 Tenn., 509, 521, 53 S. W., 134, 46 L. R. A., 567.

" 'It is a rule of the common law, in accord with the plainest principle of justice, that to warrant the removal of an official under a limited power, specific charges should be made, and, after notice, all witnesses in the matter should be sworn.' *Morley* v. *Power,* 5 Lea (73 Tenn.), 691, 700.' "

In a very recent opinion, Chief Justice HUGHES (*Morgan et al.* v. *United States,* 304 U. S., 1, 58 S. Ct., 773, 82 L. Ed., —, April 25, 1938) considers the right of the affected parties to a full and fair hearing before a legislatively created tribunal with semi-judicial powers. Among other things he said, applicable here, that "no specific complaint was formulated", that the complaint was not "definite", but was general and "sweeping", that "The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them", etc. We quote these paragraphs from this opinion:

"Congress, in requiring a 'full hearing,' [7 U. S. C.

A., section 211], had regard to judicial standards—not in any technical sense but with respect to those fundamental requirements of fairness which are of the essence of due process in a proceeding of a judicial nature. If in an equity cause, a special master or the trial judge permitted the plaintiff's attorney to formulate the findings upon the evidence, conferred *ex parte* with the plaintiff's attorney regarding them, and then adopted his proposals without affording an opportunity to his opponent to know their contents and present objections, there would be no hesitation in setting aside the report or decree as having been made without a fair hearing. The requirements of fairness are not exhausted in the taking or consideration of evidence, but extend to the concluding parts of the procedure as well as to the beginning and intermediate steps.

. . . . . . .

"The maintenance of proper standards on the part of administrative agencies in the performance of their *quasi*-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play.

"As the hearing was fatally defective, the order of the Secretary was invalid. In this view, we express no opinion upon the merits. The decree of the District Court is reversed."

■ We are of opinion that the petition to the Circuit Court presents a *prima facie* case which justified that Court in granting *certiorari* for the purpose of reviewing the judgment of the State Board in removing petitioners. This Court looks to the face of the petition before the Circuit Judge to see if, *prima facie,* a case for review is made out, or if the Judge has exceeded his discretion or authority. *Rhea County* v. *White,* 163 Tenn., 388, 43 S. W. (2d), 375; *Staples* v. *Brown, supra,* at page 655, 85 S. W., 254.

In the petition to this Court, and on the briefs, it is stressed that by the express terms of the Act of 1937 the Legislature has provided that the State Board of Elections "shall have power to remove any Commissioner of Election for cause or failure to perform his duties, and the decision of the State Board of Elections shall be final and not subject to review by any other body or tribunal, under Section 9008 of the Code, or otherwise."

■ However, it appears in the instant case that petitioners to the Circuit Court, who complain of their removal as Commissioners of Election for Shelby County, were appointed to such offices for a fixed term of two years before the passage of the Amendatory Act of 1937, Chapter 2, Third Extraordinary Session, and that the law under and by virtue of which they were appointed and which governs their tenure of office (Code, Section 1964) contained no provision at the time of their appointment making "final and not subject to review" decisions of the State Board of Elections in cases of removal. It is insisted for petitioners that they cannot be constitutionally affected in their rights, and particularly deprived of the right of review of the action of the State Board of Elections in removing them from their offices, in which

they had a property right, by this subsequently passed Amendatory Act of 1937; that to do so would violate constitutional prohibitions against retrospective and *ex post facto* laws. To this insistence we are constrained to agree, with the result that the *certiorari* in the present case, as in *Staples* v. *Brown, supra,* will bring up for review "as a substitute for appeal" errors of fact or law.

■ It is not intended hereby to imply that in those cases generally in which the Legislature has provided that the fact findings and acts of boards and other like bodies shall be conclusive or final, that the Courts may usurp the jurisdiction thus vested to pass on and finally determine the facts,—as, for instance, the value of lands for assessment, or to make choice of, or remove for cause, persons who shall exercise prerogatives prescribed in given cases. So long as these delegated powers are exercised in accordance with the authority conferred and without fraud, and the proceeding before the inferior tribunal has afforded opportunity for a full and fair hearing, the Courts have no power to review or revise the action taken. They may require only that these Boards act within the law of their creation. When they have done so, no Court may rightly assume the power to revise their findings, or their selection of persons for prescribed duties.

■ It will be observed from the foregoing quotation from *Staples* v. *Brown,* that the right of the Circuit Court is declared to review "by *certiorari* and *supersedeas*"; and the general rule is that, as auxiliary or ancillary to the writ of *certiorari, a supersedeas* may be issued when apparently necessary to stay further proceedings and thus effectuate Court review.

As has been shown, petitioners in the Circuit Court

prayed also for a writ of *supersedeas*, "setting aside the orders of the said Board of Elections, pending the further hearings and proceedings in this cause", and the *fiat* of the Circuit Judge included this writ. Of this petitioners, State Board of Elections, complain in their application to this Court, charging that this action of the Circuit Judge was beyond his jurisdiction. It is particularly insisted that no writ of the Circuit Court could be made retroactive so as to restore to office the deposed Commissioners of Shelby County, pending the disposition of the case on review by the Circuit Court; that in no event can the writ of *supersedeas* lawfully operate to do more than stay or suspend, that it can neither relate back so as to undo that which has been done, nor reach forward and compel affirmative future action; that the writ is a negative order only.

Conceding, as we have indicated, that the writ of *supersedeas* may properly issue in aid of *certiorari,* we find no persuasive authority for giving to this writ effect beyond that of a stay order, maintaining the *status quo* as of the time of its issuance, until the appeal has been heard. In accord with this view, we quote from the opinion in *McMinnville & M. R. Co. et al.* v. *Huggins et al.,* 47 Tenn. (7 Cold.), 217 at page 223, the following:

"Our statutes recognize the writ of *supersedeas* as an established remedy, but give no general definition of the writ, nor description of its office. But the only cases in which a *supersedeas* is provided for, or mentioned in the Code, except in sections 3933 and 4513, are cases in which it is given as ancillary to the writ of error and the writ of *certiorari,* and in which its office is merely to stay proceedings under the judgment or decree while the cause is pending in the appellate court; and the prop-

er office and function of the writ of *supersedeas* is, undoubtedly, merely to stay proceedings. Bouvier's Law Dict.''

 Now, in this view, holding that the Circuit Judge did not exceed his jurisdiction in granting *certiorari,* we cannot say that he was without authority to include in his *fiat* a properly limited writ of *supersedeas.* However, it appears that the writ of *supersedeas* in this case, consistently with the terms of the prayer and *fiat,* has been treated as effective to undo that which had been done by the State Board of Elections, following its judgment of removal, and before the filing of the petition in the Circuit Court, namely, the election of new and successor Commissioners of Election for Shelby County. This would be to give the *supersedeas* a back reaching effect, in conflict with the views above expressed as to its proper functions and scope.

Now, since the writ of *supersedeas* can be used only to stay, and since it appears that the judgment for review is of the self-executing class and had been acted on before the filing of the petition, it seems obvious that the writ of *supersedeas* if properly limited would be practically inoperative and serve no useful purpose.

It results that the petition in this Court will be denied in so far as it challenges the granting of *certiorari* by the Circuit Judge; but a writ will issue from this Court superseding the writ of *supersedeas* issued by the Circuit Judge.

 It may be added that the conclusion thus announced that the reviewing Court will not make a preliminary order reinstating in office former incumbents pending appeal, is in accord with rules applied in reviews of cases of ouster, *quo warranto* and like proceedings in-

volving public office. Thus in 4 C. J. S., Appeal and Error, p. 1115, section 632, it is said, "the general rule that self-executing judgments are not within the statute providing for a *supersedeas* or stay is applied to judgments of removal or ouster from office, as in *quo warranto* and similar proceedings, and judgments in election contests, and it is held that as no process is necessary to place a successful relator or plaintiff in possession of an office, an appeal or writ of error will not operate as a *supersedeas* to prevent him from exercising the functions of the office, and the filing of a *supersedeas* bond will not suspend the operation of the judgment."

In 3 American Jurisprudence 203, it is said:

"A judgment in *quo warranto* proceedings of ouster from a public office divests the person ousted of all authority and fully and completely excludes him from the office as long as it remains in force. It has been held in a number of cases that the efficacy of such a judgment is not suspended by an appeal and the filing of a stay or *supersedeas* bond, in the absence of a clear statutory provision to that effect, and therefore *mandamus* may be granted to compel the recognition of the person in whose favor judgment was entered, notwithstanding the pendency of an appeal and the filing of a *supersedeas* bond. The *supersedeas* will, however, prevent the issuance of execution for costs."

█ Other authorities are to like effect. On a former presentation of this matter we held that the Legislature validly excepted from review under section 9008 of the Code orders of the Board of Elections removing election commissioners. See *McKee* v. *Board of Elections,* 173 Tenn., 269. The only statute, therefore, authorizing the writ of *supersedeas* upon the filing of a petition for *certi-*

*orari* to review the order of this inferior tribunal or board is section 8998 of the Code. This statute is as follows:

"The clerk shall also issue a writ of *supersedeas* in all necessary cases, directed to the opposite party, or the officer in whose hands the execution may be, which shall effectually supersede all further proceedings thereon."

Now, obviously, a *supersedeas* issued under this statute would have no effect on such a judgment of the Board of Elections. As we have seen, no process, no execution, issues upon such an order or judgment. The judgment is self-executing, and, therefore, not subject to be superseded.

### On Petition to Rehear.

Mr. Justice Chambliss delivered the opinion of the Court on petition to rehear.

A petition to rehear is presented. For response to so much of said petition as seeks a construction of the opinion delivered by this Court in this cause on the 27th day of May, 1938, the Court has drawn and ordered entered, as of May 27th, 1938, in accordance with its opinion of that date, a decree in words and figures as follows:

"This cause, coming on to be heard this 27th day of May, 1938, on the petition of the State Board of Elections, or a majority thereof, for writs from this Court to supersede writs of *certiorari* and *supersedeas* issued by the Judge of the Circuit Court of Davidson County to the State Board of Elections to bring up for review the action of the said State Board in removing from office W. L. McKee, Joe Thompson and Ross A. Mathews

as members of the Shelby County Board of Election Commissioners, and to supersede the said judgment of that Board in ordering said removal, and it appearing from the allegations of the petition to the said Circuit Court that a *prima facie* case for review by *certiorari* is made out, the said petition to this Court is dismissed, in so far as the order of *certiorari* by the said Circuit Judge is challenged, or involved; but, it appearing that the judgment of removal of the former Shelby Board of Commissioners had been executed before the filing of said petition for *certiorari* and *supersedeas* in the Circuit Court, and that restitution of the said former members to office could not legally be made by the writ of *supersedeas,* pending review on the merits of the judgment of the State Board of Elections, and that, therefore, the writ of *supersedeas* could serve no useful effect, it is ordered that the petition in this Court be granted to the extent of superseding the writ of *supersedeas* issued from and by the said Circuit Court. The cause is remanded to the said Circuit Court for further proceedings in accordance herewith.

"On motion of the petitioners, permission is hereby granted that the transcript of the proceedings before the State Board of Elections in the matter of the removal of W. L. McKee, Joe Thompson and Ross A. Mathews as Commissioners of Election of Shelby County, filed as Exhibit No. 1 to the petition for writs of *certiorari* and *supersedeas* in this Court, be withdrawn from the files of this Court, in accordance with the reservation made by the State Board of Elections in filing the same as an exhibit to their petition in this Court, the purpose of such withdrawal being to enable the State Board of Elections to comply with the writ of *certiorari* issued by the First

Circuit Court of Davidson County and file such transcript of the proceedings in that Court.

"The costs in this case will be divided."

So much of said petition as seeks a rehearing of the cause must be dismissed. After careful and painstaking consideration the conclusion was reached and announced that the judgment of the State Board of Elections, vested with jurisdiction by the Legislature, by which the members of the Shelby County Board had been removed, was subject to review in the Circuit Court by *certiorari,* according to the allegations of the petition in that Court, but that, pending this review, the action taken by the State Board, before the filing of the petition of the removed members of the Shelby Board, in removing them from office, could not be superseded so as to restore them to office on a preliminary application, pending a trial of the case in the Circuit Court. Petitioners, as we conceive, could not maintain the claim that they continued to be incumbents of offices from which they had been removed by the final judgment of a Court of competent jurisdiction in the matter at issue, however erroneous and invalid this judgment might subsequently, upon review, be found to have been. Until adjudged invalid on appeal, or review, the judgment of the Board stands and the removal remains in effect. An essential predicate of the right to review by *certiorari* accorded by this Court is that petitioners for *certiorari* had, as distinctly averred, been removed from office by an erroneous or invalid judgment of the inferior tribunal, the State Board of Elections. It was this thing that *had been done* by the judgment rendered the validity of which was challenged and by this Court ordered to be reviewed. It cannot be consistently maintained that petitioners, *having been re-*

*moved* by this judgment complained of, are still incumbents of the offices.

█ The rendition of the judgment of removal left nothing to be done to accomplish the removal and create a vacancy. It was in this view that this judgment was referred to in our opinion as self-executory, that is, of that class of judgments or decrees which require nothing more than the rendition thereof to put them in effect. No execution or other process needs to be issued, as is necessary in those cases, where, for example, a decree requires a sale to be made, or a possession to be delivered up, or when a jail or death sentence is called for by a judgment. In these amotion cases, *ipso facto,* upon the passing of the judgment, the removal becomes effective and a vacancy arises. For illustration, in *Foster* v. *State of Kansas ex rel.,* 112 U. S., 201, 5 S. Ct., 8, 97, 28 L. Ed., 629, where Foster had been removed from his office as a County Attorney and the United States Supreme Court had granted writ of error, Chief Justice Waite said (page 204) : "The judgment operated of itself to remove Foster, and leave his office vacant. It needed no execution to carry it into effect." The petition of McKee and others to the Circuit Court of Davidson County, as an essential element of its prayer for review, alleged that the State Board of Elections had "ordered, adjudged and decreed" the removal of petitioners and filed as Exhibit O to said petition the following copy of said order :

"This matter came on to be heard on this the 18th day of March, 1938, before State Board of Elections, composed of Lee Ware, Chairman, Tom Taylor, Chairman *pro tem,* J. B. Miller, Secretary, Reed Sharp, Abe Waldauer and Robert Johnson, members, upon the petition,

the answer thereto, the oral testimony of witnesses before the Board, and exhibits thereto, when it appears to the Board that from the evidence adduced and from the exhibit to the testimony of witnesses good cause appears for the removal of the respondents, W. L. McKee, Ross Mathews and Joe Thompson, from the offices of Commissioners of Elections of Shelby County, it is therefore:

"Ordered, Adjudged and Decreed by the Board that the respondents, W. L. McKee, Ross Mathews and Joe Thompson, be and the same are hereby removed from office as Commissioners of Elections for Shelby County, and that the offices be and the same are hereby declared vacant."

While petitioners complained of said order or judgment as erroneous and invalid on various grounds, the fact of its making is thus shown, and this judgment of removal must remain in effect, until and unless set aside upon and after a review in the Circuit Court. By its decree herein this Court has (1) affirmed the order of the Circuit Court in granting *certiorari* to review this judgment and (2) reversed the order of said Court in granting *supersedeas,* for reasons assigned in our original opinion. This is the scope and effect of the decree of this Court. While it is obvious that vacancies in these offices from which petitioners were removed thus arose, no questions of the qualifications, eligibility or regularity of election of successors were considered, or passed upon by this Court, or were within the scope of the pleadings in this case.

The petition for rehearing insists that this "Court has assumed facts which did not exist. It is assumed that the petitioners were out of office and that their so-called successors were in. This is not true, because at the time

the petition was filed before the Circuit Court of Davidson County, the so-called successors to the petitioners had not even qualified." Again it is said, "we do not feel that this Court can adjudicate rights as between petitioners and claimants when the claimants are not even before the Court."

This Court did hold, as a legal consequence of the final judgment of the State Board, that petitioners were out of office, and from this holding it necessarily resulted that vacancies had arisen. But the Court "assumed" and adjudged nothing as to the rights of "successors", who were not "before the court".

Despite the earnest argument of petitioners, this Court is constrained to reaffirm its holding in the original opinion that, in accord with the practice in this State, and generally, when removed by a Court decree office holders will not be reinstated upon a preliminary application, pending a hearing on review. Reference is made to the reasoning and authorities in our original opinion to which we deem it unnecessary to add. Petition dismissed.

DeHaven, J., dissents to the opinion on the petition to rehear.